[Civil No. 4681. Filed May 22, 1944.]

[149 Pac. (2d) 160.]

PAUL HOFFMAN, Petitioner, v. PAUL M. BRO-
PHY, Respondent-Employer, THE INDUS-
TRIAL COMMISSION OF ARIZONA; RAY
GILBERT, EARL G. ROOKS, and FRED E.
EDWARDS, as Members of and Constituting
The Industrial Commission of Arizona, Respond-
ent-Insurers.

Messrs. Cox and Cox and Mr. Lloyd E. Canfil, for Petitioner.

Mr. Alfred C. Lockwood, for Respondent-Employer.

Mr. H. S. McCluskey and Mr. Fred O. Wilson, for Respondent-Insurers.

UDALL, Superior Judge.—The petitioner, Paul Hoffman, on February 15, 1940, while working for Paul M. Brophy on a farm near Casa Grande, Arizona, was injured in an accident compensable under the Workmen's Compensation Law (Chapter 56, Article 9, Arizona Code Annotated 1939). The respondent employer carried industrial insurance with the Industrial Commission of Arizona, as insurance carrier.

Timely application was made by the petitioner to the Industrial Commission for compensation, and on June 28, 1940, it awarded him compensation for temporary total disability. Petitioner protested the award and the Commission made amended awards and findings on May 3, 1943, May 24, 1943, and September 9, 1943. The third amended award, made on the date last stated, recited that compensation for the temporary total disability had been fully paid, and then found "said injury caused also a permanent partial disability equal to 25% of a permanent total disability, entitling said applicant to compensation therefor

in the sum of $7.63 monthly during the life of said applicant.'' The award was in accordance with this finding and the petitioner being dissatisfied therewith has bought them before this Court for review.

Petitioner attacks the award in this case on three grounds: (1) That the findings are legally insufficient to sustain it, (2) that the commission used an illegal method in evaluating the evidence and determining the ultimate facts, and (3) that the evidence, properly considered, is insufficient to sustain the findings.

The accident in which petitioner was involved occurred while he was loading commercial fertilizer. He fell from a trailer onto the trailer hitch, striking his lower back and spine, causing bruises and contusions in the lumbar region of the back. While the X-ray disclosed no visible fracture, there was definite evidence of injury to the twelfth dorsal vertebra. The injured man was first treated by a doctor at Casa Grande, and the next day he was removed by ambulance to the Pinal County Hospital at Florence, where he remained for some seventeen days.

Between the date of the injury and the final award the petitioner was treated or examined by some fourteen reputable physicians, several of whom were of his own choosing. Numerous X-rays were taken, pathological laboratory tests made, and all that modern medical science could do for him was done, at the expense of the Commission. A Medical Rating Board, paid by the commission, but chosen in part by the petitioner or his attorney, first gave him a ''functional physical disability'' rating of 5%, and later on this was increased to a 25% disability.

It appears from the record that the petitioner, who was then forty-eight years of age, enjoyed good health prior to the injury, and was able to do all kinds of heavy manual labor. He stoutly maintains that he has been unable to do any gainful work since the time

of the injury, that he suffers pain constantly, that his earnings have been practically nil, and that he has subsisted only by reason of the generosity of relatives and friends, with some aid having been received from public charitable agencies. There is some evidence that he could do light work such as dish washing, poultry raising, etc.

There is a slight conflict as to the amount of the monthly wage paid petitioner prior to his injury; it ranged from $55 to $61, which included an allowance for house rent. While there is no explicit finding by the commission as to his earnings, from the award it can be mathematically determined that the Commission found that his wage was $55.50 per month. There is no finding as to the monthly wage the petitioner was able to earn thereafter.

From the nature of this injury it is readily apparent that it falls under Sec. 56–957, subdivision (c), Arizona Code Annotated 1939, which is the same as what is referred to in the earlier cases as "subdivision (w)" of section 1438, Revised Code 1928. In the law reports this type of injury is frequently referred to as "other cases" or "odd-lot case," as distinguished from the "scheduled injuries" enumerated under Sec. 56–957 (b). The statute, sub. (c) of Sec. 56–957, *supra,* is clear and unambiguous, and is as follows, viz.:

"In cases not enumerated in subsection (b), where the injury causes partial disability for work the employee shall receive, during such disability, compensation equal to fifty-five (55) per cent of the difference between his average monthly wages before the accident and the monthly wages he is able to earn thereafter, but the payment shall not continue after the disability ends, or the death of the injured person, and in case the partial disability begins after a period of total disability, the period of total disabil-

ity shall be deducted from such total period of compensation.''

The statute just quoted states explicitly of what the award shall consist. It is 55% of the difference between the claimant's monthly wages before the accident and the monthly wages he is ''able to earn'' thereafter. *Zagar* v. *Industrial Commission,* 40 Ariz. 479, 490, 14 Pac. (2d) 472; *Kilpatrick* v. *Hotel Adams Co.,* 42 Ariz. 128, 132, 22 Pac. (2d) 836; *Six Companies, Inc.,* v. *Industrial Commission,* 42 Ariz. 501, 27 Pac. (2d) 678; *Ossic* v. *Verde Central Mines,* 46 Ariz. 176, 188, 49 Pac. (2d) 396.

While such a determination may present substantial difficulties due to the fact that it is impossible to determine with mathematical certainty the exact extent of the loss of earning power when it is only partial in its nature, yet the Commission, however, in discharging this duty is not left wholly without guide posts to point the way, for the very next paragraph of the code, subdivision (d) provides:

''In determining the percentage of disability, consideration shall be given, among other things, to any previous disability, the occupation of the injured employee, the nature of the physical injury, and the age of the employee at the time of. the injury. . . . ''

In the Zagar and Six Companies, Inc., cases, *supra,* we have held that the true meaning of ''percentage of disability,'' referred to in sub. (d), *supra,* is ''the percentage of disability to earn his former wages [40 Ariz. 479, 14 Pac. (2d) 476].''

The objection most vigorously urged here by the petitioner is that the Commission in performing its *quasi*-judicial function of making this award fell into the error of accepting the percentage of ''functional physical disability'' fixed by its Medical Rating Board as being identical and controlling as to the ''percentage of loss of earnings'' suffered by the claimant as

a result of the accident. It is further urged that the undisputed testimony of claimant and his witnesses as to ''loss of earnings,'' as well as the other factors referred to under sub. (d), *supra,* were ignored and no consideration given them by the Commission as triers of the facts. If these charges be borne out by the record then the award must be set aside.

■ We, of course, are not the triers of the fact, and we adhere to our oft repeated rule that if there is any competent evidence in the record to sustain the action of the Commission, it is conclusive and binding on this Court. *Federal Mutual Liability Insurance Co.* v. *Industrial Comm.,* 31 Ariz. 224, 252 Pac. 512. If, however, the award was based and proceeds upon an erroneous and improper theory, the above rule would not preclude us from correcting manifest error and preventing an injustice being done. We need not go beyond the respondent Commission's brief to determine the basis for this award:

At page 4:

''Records No. 13, 14, 16 and 25 conclusively show that the Commission accepted the recommendation of the Medical Board (Record No. 16), and based its findings of 25% disability upon said recommendation (Records 13 and 14), and computed the wage on the basis of $55.50 per month (Record 20).''

At page 3:

''Presumptively, this finding of 25% permanent partial disability is founded upon the report dated August 27, 1943, and signed by Chas. N. Ploussard, Louis B. Baldwin and F. M. Kilgard (Record No. 16), this presumption being supported by the memorandum of the members of the Industrial Commission dated August 21, 1943 (Record No. 25).''

At page 6:

''Concerning the only other essential finding, that is, the measure of the disability, the award (Record

13), and the action of the Commission (Record 14) rest and depend upon Record No. 20, wherein the Medical Board recommended an award of 25% of total disability.''

And at page 10:

''It is clear that the compensation award in this case is based upon the estimate of 'functional disability' as determined by the doctors.''

██ The documents referred to in above quotations, certified copies of which are now before us, amply sustain the admissions above made. It is also significant that in the hearing and re-hearings had in this matter that the award invariably followed the same percentage as fixed by the Medical Board. In other words, when the latter fixed a higher percentage of functional disability the award was correspondingly increased. The erroneous theory under which the Commission was then laboring is even more clearly disclosed by its adoption on January 3, 1944, under the authority granted by subsection (e) of Sec. 56–957, Arizona Code Annotated 1939, of a rule which in effect would have based the award in all cases such as this on percentage of ''functional disability'' as found by the Medical Board. We understand that this Rule has since been vacated.

We commend the practice of the Commission in having Medical Boards determine the ''functional disability'' of the claimant in all cases such as this, for this is one, but only one, of the important factors to take into consideration in determining the claimant's ''ability to earn.'' However, all of the factors enumerated under sub. (d), *supra,* must also be considered, as well as the ''other things'' not named, which would logically have a probative bearing on the matter.

We certainly do not agree with the respondent employer that it is obvious that in the vast majority of

cases arising under the Act that the percentage of "functional disability" would be almost identical with the percentage of "decreased ability to earn." For instance, with the ordinary professional man or other "white collared" worker a back injury causing a 15% or 25% "functional disability" might not decrease his earning capacity at all; whereas, with a common laborer such a back injury might be nothing short of an economic disaster. There is no necessary parallel relationship between the percentage of general functional physical disability and the percentage of loss of earnings. Each case must necessarily stand upon its own bottom and be judged by the factors set out in the statute and others that are incident to a particular case.

It would doubtless be much easier and simpler for the Commission in determining matters that come before it under the "odd lot cases" to blindly adopt the percentage fixed by the doctors on "functional disability" as constituting the percentage of "loss of earnings," but that is not what the statutes require. Grave injustices to the claimants would frequently follow such unwarranted procedure. It is the Commission's duty to follow the plain mandate of the statute, difficult though the task may be.

■ It is, of course, a rule that every injured person must seek to minimize his loss, and to put forth an active effort to procure such employment as he is able to. *Utah Fuel Co.* v. *Industrial Comm.*, 76 Utah 141, 287 Pac. 931. It may even be necessary that he change his former vocation. *Savich* v. *Industrial Comm.*, 39 Ariz. 266, 5 Pac. (2d) 779. The Commission should also be on the alert to weed out the malingerer, and the lazy and indolent should not be rewarded. The measure of the award in a case such as this is not the percentage of "functional disability," nor the amount of wages actually earned since the

injury, but rather the loss of earnings caused by the injury. We think it clear, the legislature intended that the effect of the physical condition of the employee on his "ability to earn" was to be judged by the type of work he was doing at the time of his injury.

■ There is a matter of evidence, squarely raised by the appeal, deserving of comment which we mention for the guidance of the Commission: It should be kept in mind that medical evidence is only as to the physical injury or disability and not as to how that affects earnings. The latter issue is wholly outside of the knowledge of the average doctor. Unless specially qualified, he could not testify as an expert in this field, and medical testimony alone would be entirely incompetent to establish average monthly wages of claimant before the accident or the monthly wage he is able to earn thereafter. In other words a doctor, as such, cannot testify as to the percentage of industrial or economic impairment consequent on the loss of certain physical functions.

A case that covers the proper scope and evaluation of a doctor's testimony is *Silver King Coalition Mines Co.* v. *Industrial Commission of Utah,* 92 Utah 511, 69 Pac. (2d) 608, 612, from which we quote as follows:

"Doctors cannot testify as to the economic fitness of an applicant to carry on certain work, unless they show that they are familiar with what is required in that work. For that reason, they cannot ordinarily testify as to the extent an applicant is industrially or economically incapacitated. *Price* v. *Industrial Comm.* [91] Utah [152], 63 Pac. (2d) 592. But they may always testify as to the amount of loss of physical functions, if material. . . . may give an opinion as to that ultimate fact and may give it in terms of a percentage of the full functioning as before the injury occurred. (Citing cases.)

"Where the ultimate question is not one of loss of bodily function, but actual partial or total disability economically and industrially, as provided for in the first paragraph of section 42–1–62, R. S. 1933, and section 42–1–65, the loss of bodily function is only an aid to such ultimate question and the doctors should testify only as to such loss and not to the ultimate question of industrial or economic disability, except when the doctor qualified in addition to his medical knowledge that he has sufficient knowledge of what physical or mental abilities a certain occupation or vocation calls for, . . . ."

By reason of the fact that it indubitably appears from the record that the award was predicated upon an erroneous and improper theory, and that the Commission used an illegal method in evaluating the evidence and determining the ultimate facts, we are vacating the award. The findings of fact are also very incomplete and leave much to be desired, which will doubtless be corrected on re-hearing. The award of September 9, 1943, is vacated and set aside and the case is remanded, with directions that further proceedings be taken in accordance herewith, using as a basis for findings the evidence already in the record and any other competent evidence that may be offered by any of the parties.

ROSS and STANFORD, JJ., concur.

McALISTER, C. J., having disqualified, the Honorable LEVI S. UDALL, Judge of the Superior Court of Apache County, was called to sit in his stead.