368 P.2d 450

PHELPS DODGE CORPORATION,
MORENCI BRANCH, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona and Leon R. Lloyd,
Respondents.

No. 6823.

Supreme Court of Arizona.

En Banc.

Jan. 31, 1962.

Evans, Kitchel & Jenckes, Phoenix, for petitioner.

James D. Lester, Donald J. Morgan, Frances M. Long and Edward E. Davis, Phoenix, of counsel, for respondent Industrial Commission.

Rogge, Rogge & Stark, Tucson, for respondent Leon R. Lloyd.

STRUCKMEYER, Justice.

Petitioner, Phelps Dodge Corporation, has moved for a rehearing urging that we reconsider our decision, Phelps Dodge Corp., Morenci Branch v. Industrial Comm., 367 P.2d 270 (Ariz.1961). A rehearing is not granted to reargue matters determined by the decision. Climate Control, Inc. v. Hill, 87 Ariz. 201,. 349 P.2d 771.

Petitioner, however, implies cavalier treatment stating that the Court disposed of the questions presented "in a summary manner, without fully considering the arguments advanced." Essentially, petitioner's dissatisfaction is reflective of a problem not without some vexatious aspects. The Constitution requires that the Court's decision be in writing and the ground stated. Art. VI, Sec. 2. Certainly, parties to litigation are entitled to be advised of the reasons persuading the Court to its conclusion. Equally certain, the decision need not contain a seriatim rebuttal of points made or arguments advanced. Enlargements upon the ground of decision ought to be limited to matters where areas of genuine dispute exist.

Lines of distinctions can be drawn. Some cases present problems where principles sought to be applied have not been settled or accepted. These provoke bitter disagreements, and, consequently, often demand extensive analysis and exhaustive discussion. Others, however, simply present the question whether the cause is controlled by one or another of previously announced rules. These do not require extended treatment for the arguments have been recognized and met in former decisions or distinctions sought to be drawn are clearly negatived by objective examination of the holding in the case. Such a case is petitioner's. We said that the questions for determination were not novel. Hence, the case could be and was disposed of summarily.

382

■ Petitioner's assertion that the disposition "was without fully considering the arguments advanced" gives us concern. If petitioner means that the decision did not refute each argument advanced in petitioner's brief, petitioner is correct, it did not. Nor was it so intended. But if it is meant that the Court failed to negotiate with petitioner the subtle course of its reasoning, then there is some justification in the request for reconsideration. We do not discourage applications for rehearing. It is the last opportunity to correct error. But here, it is plain that petitioner was fully understood the first time around.

■ In principle petitioner's case is uncomplicated. When the Commission determined that Lloyd had sustained a general physical functional disability, as it did on the 10th day of January, 1958, it then became its duty to determine Lloyd's resulting diminution of earning capacity. After a hearing, on August 13th, 1958 this was done; Lloyd was found totally disabled. Thereafter at petitioner's request a rehearing was held and the Commission on January 13th, 1959, reaffirmed its previous findings and award. The question whether the evidence supports the decision on rehearing finds its solution in an examination of the evidence. It only becomes complicated because of petitioner's erroneous assumptions concerning the law applicable to the facts.

■ The crux of petitioner's position is its conclusion that "there is absolutely no competent medical evidence in the record to sustain a finding that Lloyd is totally and permanently disabled to *perform* any employment." Petitioner's conclusion contains two false assumptions which permeate and color its arguments and contentions. *First,* petitioner assumes that medical evidence is necessary to sustain a finding of total disability. Medical evidence is required to establish the nature of injuries and the extent of loss of physical function. Goodyear Aircraft Corp. v. Industrial Commission, 89 Ariz. 114, 358 P.2d 715. Medical evidence, that is, doctors' opinions, suppositions or conclusions from the injuries, is not competent to establish the extent that injuries affect earning capacity.

In the decision we cited to Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160, wherein the point was fully explored. There we said:

"There is a matter of evidence, squarely raised by the appeal, deserving of comment which we mention for the guidance of the Commission: It should be kept in mind that medical evidence is only as to the physical injury or disability and not as to how that affects earnings. The latter issue is wholly outside of the knowledge of the average doctor. * * *" 61 Ariz. 307, 315, 149 P.2d 160, 163.

We quoted with approval from Silver King Coalition Mines Co. v. Industrial Commission of Utah, 92 Utah 511, 69 P.2d 608, 612, that:

" 'Where the ultimate question is not one of loss of bodily function, but actual partial or total disability economically and industrially, * * * the loss of bodily function is only an aid to such ultimate question and the doctors should testify only as to such loss and not to the ultimate question of industrial or economic disability, * *.' "

■ The Medical Advisory Board found "cortical atrophy" resulting in "poor mental grasp" and "a 35% general physical functional disability". On these facts and other facts pertinent to the inquiry as to diminished earnings it became the Commission's responsibility and duty to decide the extent of Lloyd's loss of earnings. By its Finding # 9 of August 13th, 1958, the Commission determined that Lloyd was "physically and mentally unable to perform any employment in the open, competitive labor market, and * * * therefore that said applicant has sustained permanent total disability * *." That the Commission had the right to make such a determination on competent evidence independent of the doctors' opinions in regard to how the injuries affected earning capacity can not be doubted.

■ *Second,* petitioner assumes and attaches a literal and unrealistic significance to the phrase "total disability". "Total disability" as used within the law of Workmen's Compensation has a well understood meaning:

" 'Total disability' in compensation law is not to be interpreted literally as utter and abject helplessness. Evidence that claimant has been able to earn occasional wages or perform certain kinds of gainful work does not necessarily rule out a finding of total disability nor require that it be reduced to partial. * * * The rule followed by most modern courts has been well summarized by Justice Matson of the Minnesota Supreme Court in the following language:

" 'An employee who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' " 2 Larson, Workmen's Compensation Law § 57.51, p. 25, 26 (1952).

■ An employee need not be absolutely disabled to be totally disabled within the meaning of Workmen's Compensation Statutes. Endicott v. Potlatch Forests, 69 Idaho 450, 208 P.2d 803; Frennier's Case, 318 Mass. 635, 63 N.E.2d 461; Kalson v. Star Electric Motor Co., 15 N.J.Super. 565,

83 A.2d 656, aff'd., 21 N.J.Super. 15, 90 A.2d 514; Elliott v. Gooch Feed Mill Co., 147 Neb. 309, 23 N.W.2d 262, aff'd. as mod'f'd., 147 Neb. 612, 24 N.W.2d 561; 99 C.J.S. Workmen's Compensation § 299, p. 1058. Nor need he be helpless, Thomas v. Industrial Comm. of Utah, 95 Utah 32, 79 P.2d 1; Rapp v. Hale, 170 Neb. 620, 103 N.W.2d 851; Tilghman v. Mills, 169 Neb. 665, 100 N.W.2d 739; Peabody Coal Co. v. Taulbee, 294 S.W.2d 925 (Ky.1956). For example the Supreme Court of Nebraska said:

> "The plaintiff in the case at bar is an unskilled, or common, laborer. It has been shown that he can only work, if at all, at the lightest kind of common labor, such as sitting down, with no heavy lifting. He is, therefore, what is called an 'odd lot' man, the nondescript in the labor market, with which industry has little patience, and rarely hires. Work, if he finds any that he can do, is casual and intermittent. He is utterly unable to do the work he did before this accident. Under these facts, we think we are justified in finding that in his present handicapped condition he is entitled to an award for total disability under the Nebraska Compensation Act." Elliott v. Gooch Feed Mill Co., 23 N.W.2d 262, 266.

The Commission was not compelled to find that Lloyd was unable to perform any employment in order to find that Lloyd was totally disabled.

We indicated in our decision that the evidence was susceptible of the construction that Lloyd was capable of performing certain types of work such as janitorial services and the like. Our subsequent discussion of the evidence and our conclusions indicated that this was not controlling. The Commission must as the end product of its investigation decide whether in a competitive labor market the subject in his injured condition can probably sell his services and for how much. Davis v. Industrial Commission, 82 Ariz. 173, 309 P.2d 793. Hence, even assuming that the Commission credited the opinion of Dr. McGrath which it should not for the reason heretofore stated, that Lloyd "could perform almost any type of work which didn't require very much education or quick exercise of intellectual judgment", the Commission could still believe and find that Lloyd probably could not sell his services in a competitive labor market, in his injured condition.

As stated, petitioner complains that the Court disposed of the cause without fully considering certain portions of its argument. For example:

(1). Petitioner complained of the Commission's procedure in arriving at its finding of total disability. We found noth-

ing incongruous in the Commission's directing that a hearing be held to determine Lloyd's partial disability and from the evidence there produced reaching the conclusion that total disability was sustained. Indeed, if the Commission was convinced of the fact of total disability, it could not conscientiously have found otherwise.

(2). Petitioner complained that the Finding # 9 quoted supra, was ambiguous. Finding # 9 is one of ultimate fact. Its seemingly ambiguity was resolved by the Court's decision as to the law applicable to the facts of the case. We stated in London v. Industrial Commission, 71 Ariz. 111, 223 P.2d 929:

> "The Industrial Commission [of Arizona] is a quasi-judicial body and in making its findings and award in compensation cases it is performing a judicial function. Its judgment in such matters is entitled to equal dignity with judgments of the superior court and the same rules apply to it on appeal to this court as apply to superior court judgments." 71 Ariz. 111, 115, 223 P.2d 929, 931.

It probably should be pointed out that a judgment of the trial court will be sustained, if it can be sustained, upon any theory which is within the issues and supported by the evidence. Mountain States Construction Co. v. Riley, 88 Ariz. 335, 356 P.2d 648; Odom v. First National Bank of Arizona,

85 Ariz. 238, 336 P.2d 141; Phoenix Safety Investment Co. v. James, 28 Ariz. 514, 237 P. 958.

(3). Petitioner complained that for three months prior to the rehearing of November 17th, 1958, the Clifton-Morenci area was in an economic depressed condition and hence this period was not a proper test of Lloyd's ability to gain employment. Petitioner overlooks other evidence which weighs against it. For example, Dr. C. H. Ganz, Chief Surgeon, employed at the Phelps Dodge branch hospital at Morenci advised the Commission on July 13th, 1957, that Lloyd was being disqualified from work and recommendations were made for psychiatric and neurological re-evaluation and that Lloyd "should have only the most sedentary employment." Thereafter, Lloyd was never re-employed in any capacity, sedentary or otherwise, by petitioner. We think it sufficient to say that the Commission could conclude that if in the ensuing seventeen months petitioner was unwilling to re-employ Lloyd in sedentary work, other employers would probably not be more charitably inclined.

Petitioner now complains that it is the duty of this Court to review the evidence in every industrial case. This is another unwarranted assumption. By Statute, A.R.S. § 23–951, subd. B the Court may review the evidence. In most cases we choose to review the evidence, but there is

no implication that our duty is to detail in the decision the minutiae gleaned from a record which as in this case extended over a period of nearly six years. We quoted the Medical Advisory Board as illustrative of Lloyd's physical and mental condition. It was a summarization by five eminently qualified doctors of not only pertinent information contained in the record to the time of their report but of their personal examination of him. It was not challenged on rehearing. Evidentially it weighed as heavily against petitioner after the award on rehearing as before, having probative force in determining the ultimate question whether Lloyd in his injured condition could probably sell his services in a competitive labor market.

Finally, petitioner urges that the statements quoted by this Court in its decision with respect to Dr. McGrath's evidence do not represent the doctor's opinion after a further evaluation of Lloyd's condition. The decision quoted two statements of Dr. McGrath:

"Physical labor will cause headaches even in the absence of responsibility. Light work would entail some use of judgment for which he is no longer qualified."

We do not believe that Dr. McGrath receded substantially from the statements quoted. At the rehearing he was specifically queried regarding each and testified:

"Q. Following your October examination would it be your opinion that physical labor would cause headaches?

"A. It could. In October or now, I am not as impressed with that complaint as I was in June and previously, but I don't think the headache would be of any disabling nature.

\* \* \* \* \* \*

"Q. \* \* \* With respect to the latter part of that paragraph, do you feel now that Mr. Lloyd has greater mental faculties with respect to the use of judgment than he had at that time or do you feel now that your impression of his judgment is greater than it was at that time?

"A. The second is correct; my impression is different.

\* \* \* \* \* \*

"Q. In your opinion has Mr. Lloyd sustained some mental deterioration or lack of the use of sound judgment by virtue of this accident?

"A. Yes."

It is ordered that the decision of this Court of December 13th, 1961, be supplemented, and as so supplemented the motion for rehearing is denied and the award of the Industrial Commission is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.