488 P.2d 484

**MAGMA COPPER COMPANY, Petitioner Employer,**

**State Compensation Fund, Petitioner Carrier,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Jesus G. Garcia, Respondent Employee.**

**No. I CA–IC 592.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 9, 1971.

Rehearing Denied Oct. 18, 1971.

Review Denied Nov. 23, 1971.

**280**

Twitty, Sievwright & Mills, by John F. Mills, Phoenix, for petitioner employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for petitioner carrier.

William C. Wahl, Jr., Chief Counsel, Industrial Commission of Arizona, Phoenix, for respondent.

Chris T. Johnson, Phoenix, for respondent employee.

STEVENS, Presiding Judge.

Jesus G. Garcia was an employee of the Magma Copper Company. He sustained an injury which was determined to be a scheduled injury and the award became final. Prior to 1 January 1969 he filed a petition to reopen and the matters relating to and arising out of the petition to reopen are governed by the law as it existed prior to 1 January 1969. The petition to reopen was granted and it was determined by the award that the injuries which Garcia sustained were of an unscheduled category. The matter before us relates to the Commission's award of compensation for loss of earning capacity.

Garcia had been a miner and was a timberman working for Magma when a rock struck him in the back on 14 September 1965. The adjudicated residuals of this industrial accident were a permanent partial disability to one leg. The date of Garcia's birth was established to be 29 October 1901.

Prior to the September 1965 injury there were physical examinations of Garcia which disclosed degenerative arthritic changes in the lumbar and lumbosacral portion of the back.

In relation to the September 1965 injury and on 27 July 1966 Doctor H. W. Finke reported:

"He will never be able to perform his usual work and limited duty would not appear helpful or practical because of the combination of his age, obesity and effects of the injury.

"He indicates an inclination to retire."

On 8 August 1966 a scheduled award was entered for a permanent partial disability

equal to a 20% loss of function of Garcia's right leg. The award became final. At about the time of the payment of the last of the scheduled payments arising out of the award, Garcia sought and was granted an early retirement. He testified that he would have preferred to remain employed and that after his injury he had little success in his efforts to secure employment. Initially his retirement income was $51.50 per month and this was later increased to $72.81 per month. He received Social Security. At the time of his retirement he received $1640.00 in severance pay from Magma.

On 3 May 1967 he filed his petition to reopen urging that due to the industrial accident he was entitled to an unscheduled award with payments for his loss of earning capacity. After hearings an award was entered on 11 December 1969. The fifth finding contained in the award is as follows:

"The applicant has sustained an un-scheduled disability as the result of his industrial accident of September 14, 1965."

The award reserved jurisdiction to determine Garcia's loss of earning capacity. The award became final.

Thereafter further evidence was taken. At the time of the last hearing Garcia was employed by his church in a ministerial capacity for $45.00 per month. We quote portions of the findings of the hearing officer.

"1. The applicant has sustained a 93.53% reduction in monthly earning capacity as a result of both the industrial injury of September 14, 1965 and other non-industrial factors such as age, retirement and lack of motivation. 38% of said reduced earning capacity is attributable to said industrial injury.

"2. The applicant has therefore sustained a 35.54% reduction in monthly earning capacity attributable to the said industrial accident and is therefore entitled to an award of $135.85 per month until further order of the Commission, pursuant to the provisions of A.R.S. 23–1044."

The hearing officer set forth in detail the various factors which he considered. The matters above-referred to were incorporated into and became a part of the award here in question.

The hearing officer relied upon and quoted extensively from the case of Talley v. Industrial Commission of Arizona, 105 Ariz. 162, 461 P.2d 83 (1969). We best set forth the reasoning of the hearing officer, which apparently was persuasive to the Industrial Commission, by a further quotation from his report:

"Based upon the authority of the Tally (sic) case the undersigned Hearing Officer has somewhat arbitrarily, but only after considerable deliberation, determined that 38% of the applicant's 93.53% loss of earning capacity is attributable to the industrial injury. In assigning only 38% of the loss to the industrial injury the following facts weigh heavily: On August 30, 1966 the applicant at age 64 was retired on company pension and two months afterward at age 65 became eligible and has been receiving tax-free Social Security benefits; further tax-free benefits will result from disability compensation to be paid under the present claim; he also earns $45.00 per month as a minister and is now 68 years of age; he apparently has little, if any, interest in seeking and performing other gainful employment. Under these circumstances the foregoing apportionment of loss is in the opinion of the undersigned Hearing Officer reasonable and equitable."

Magma urges that there is no evidence to support the decision that 38% of Garcia's 93.53% of reduction in earning capacity was causally related to his 14 September 1965 injury.

The following cases have been called to our attention: Hoffman v. Brophy, 61 Ariz. 307, 149 P.2d 160 (1944); Eaves v. Industrial Commission, 73 Ariz. 78, 237 P.2d 809 (1951); Vinson v. Industrial

Commission, 73 Ariz. 356, 241 P.2d 794 (1952); Davis v. Industrial Commission of, Arizona, 82 Ariz. 173, 309 P.2d 793 (1957); Magma Copper Company v. Industrial Commission of Arizona, 96 Ariz. 341, 395 P.2d 616 (1964) and the Talley case relied upon by the hearing officer.

In Davis the award was set aside because the Supreme Court held that the Commission had not applied the statutory criteria. The Supreme Court recognized that the determination of loss of earning capacity

"* * * may present substantial difficulties due to the fact that it is impossible to determine with mathematical certainty the exact extent of the loss of earning power when it is only partial in its nature * * *." 61 Ariz. at 311, 149 P.2d at 161.

The Supreme Court further stated:

"Each case must necessarily stand upon its own bottom and be judged by the factors set out in the statute and others that are incident to a particular case." 61 Ariz. at 314, 149 P.2d at 163.

Eaves and Vinson both held that before "imponderables" may be considered, they must be supported by evidence in the record. These cases appear to be more restrictive than Hoffman and more restrictive than the more recent Talley case.

In Davis the Supreme Court recognized that

"the problem of determining the future earning capacity of a disabled man involves a certain amount of indefiniteness." 82 Ariz. at 175, 309 P.2d at 795.

The Supreme Court continued with additional statements which we believe apply to a fact situation materially different from the one in the case now under consideration.

The decision in Magma cites Davis. The issue in Magma was the proof of the injured workman's capacity to compete in the open labor market. In the case before us, Garcia has no capacity to compete in the open labor market and his earnings are but the $45 he receives from his church.

We turn to Talley as did the hearing officer. We believe the key statements for our consideration in the case before us are as follows:

"While the fact of retirement does not have any direct bearing in support of the Commission's award, it does point up a problem necessary to be resolved in many industrial accident cases. This is the weight to be attributed to the infirmities of old age. Some men remain vigorous and active long past the customary age of retirement. But those engaging in hard or arduous labor are usually the first compelled to retreat from or who become the casualties of the labor market.

*     *     *     *     *     *

"As stated, these cases are difficult to evaluate because of the inconclusive nature of the evidence from which the evaluation must be made. But made it must be. We cannot supersede the judgment of the men appointed by law to make these decisions where there is, as here, some reasonable evidence to support their judgment." 105 Ariz. at 165, 461 P.2d at 86.

We do not find an abuse of discretion. We hold that in the very difficult field of attempting to apportion that part of a man's loss of earning capacity which is attributable to the industrial accident in relation to that portion which is attributable to his preexisting physical ailments or to the natural progression of his preexisting physical ailments, we will not disturb the decision of the Commission merely because one cannot reach a mathematical formula for the computation.

The award is affirmed.

CASE and DONOFRIO, JJ., concur.