NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

SAFELITE GROUP DBA SAFELITE AUTO GLASS, *Petitioner Employer*,

ACE AMERICAN INSURANCE CO., *Petitioner Carrier*

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

JULIO ORDAZ, *Respondent Employee.*

No. 1 CA-IC 20-0014
FILED 12-15-2020

---

Special Action - Industrial Commission
ICA Claim No. 20132-050050
Carrier Claim No. 30130819780-0001
The Honorable Amy L. Foster, Administrative Law Judge

**AFFIRMED**

---

COUNSEL

Quintairos, Prieto, Wood & Boyer, P.A., Phoenix
By Terence N. Cushing, Rita J. Bustos
*Counsel for Petitioner Employer and Petitioner Carrier*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Taylor & Associates, P.L.L.C., Phoenix
By Chris Gulinson
*Counsel for Respondent Employee*

—————————————

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Chief Judge Peter B. Swann joined.

—————————————

**W I N T H R O P**, Judge:

**¶1**        This statutory special action arises out of an Industrial Commission of Arizona ("ICA") award finding that Julio Ordaz suffered a 66.25% loss of earning capacity ("LEC") due to an unscheduled industrial injury.  Petitioners Safelite Group dba Safelite Auto Glass ("Safelite") and Ace American Insurance Co. argue that the evidence does not support the findings of the administrative law judge ("ALJ").  However, the record demonstrates evidence supporting the ALJ's findings; accordingly, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        Ordaz is a fifty-eight-year-old man who worked in the auto glass industry for over thirty years until he injured his back while working for Safelite as a windshield installer in 2013.  His injury eventually required a multi-level surgical fusion of his lower spine in May 2017.  His medical condition became stationary in May of 2018, and his treating surgeon assigned a 15% permanent impairment as a result of the industrial injury.  The ICA administratively calculated that Ordaz had sustained a 38.14% LEC.  Both Safelite and Ordaz challenged that finding by requesting a hearing.

**¶3**        An ICA ALJ heard testimony from three witnesses called by Ordaz: Dr. Paul R. W. Gause, an orthopedic surgeon specializing in spinal

surgery and Ordaz's treating surgeon; Gayle Tichauer, a labor market consultant; and Ordaz. Safelite did not call any witnesses.

¶4            Dr. Gause described Ordaz's permanent work restrictions as infrequent lifting of no more than thirty pounds and only lifting from waist level, not from the ground. He recommended Ordaz should limit bending or twisting at the waist to no more than ten times per hour, and should not sit or stand in one place for more than one hour at a time without several minutes of movement every hour.

¶5            Ordaz testified that in June 2018, Safelite offered him a full-time job as a "Repair Medic," repairing windshield chips and cracks. He was familiar with what that job entailed and began the training for it but only lasted a half-day before back pain caused him to go home early and not return. Ordaz testified that the job required bending and kneeling, which was physically challenging for him. Getting access to some windshield cracks on certain types of vehicles involved body positions that were difficult for him, including climbing on the top of vehicles. The job also required the technician to vacuum the floorboards, which required repetitive bending or kneeling. Ordaz testified that he tried the training but could not physically perform the job because of the pain and his back limitations. He also testified that he had tried to find other jobs that he could perform with his work restrictions, but could not find an employer who would offer him a position.

¶6            Labor market consultant Gayle Tichauer prepared an LEC report for Ordaz. She considered Dr. Gause's work restrictions and concluded that Ordaz could not return to his pre-injury employment, nor could he perform the duties required of a windshield "Repair Medic" or auto glass technician. She testified that Ordaz had only completed six years of formal schooling, was not computer literate (he does not type or use email), and could not make change in a cash transaction. He also has trouble reading and writing in both English and Spanish. Based on that information, she concluded that he could not work any job "above an unskilled level." Therefore, she opined that a suitable position for Ordaz would be cleaning offices as part of a cleaning crew, where he could get help with some of the tasks that required lifting or bending. That job, she testified, would accommodate his work restrictions and be suitable for his level of education. This work is also "reasonably available in the metropolitan Phoenix area." Using the office cleaning job as the benchmark, she calculated that Ordaz had sustained a 66.25% LEC.

¶7        As noted, Safelite did not present any testimonial evidence; instead, they argued that Ordaz had not made a good-faith effort to obtain suitable employment and, therefore, had not met his burden of proving an LEC other than the one administratively calculated by the Claims Division. The ALJ considered but ultimately rejected that argument and agreed with Tichauer's opinions; accordingly, the ALJ found a 66.25% LEC resulting in a monthly benefit of $1,525.27. Upon administrative review, the ALJ described Ordaz's testimony as "credible" and affirmed the LEC award. This appeal followed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(B) and 23-951(A).

## ANALYSIS

¶8        In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings but review questions of law *de novo*. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14 (App. 2003); *Hoffman v. Brophy*, 61 Ariz. 307, 312 (1944) (explaining the court will uphold an award "if there is any competent evidence in the record to sustain [it]"). Viewing the evidence in the light most favorable to sustaining an award, we will affirm the decision unless there is no reasonable basis for it. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16 (App. 2002).

¶9        The injured employee bears the burden of establishing each element of a claim. *Yates v. Indus. Comm'n*, 116 Ariz. 125, 127 (App. 1977). To show an LEC, an injured worker must demonstrate an "inability to perform the job at which he was injured and to get other work which he can perform in light of his physical impairments." *Zimmerman v. Indus. Comm'n*, 137 Ariz. 578, 580 (1983). Generally, one can meet this burden by showing that the industrial injury prevents a return to the prior employment and that there has been a reasonable effort to find work in the area of residence. *Id.* Factors to consider when determining an LEC include, but are not limited to, work history, work restrictions, and age at the time of injury. A.R.S. § 23-1044(D). The worker's "residual earning capacity can only be established by evidence of job opportunities that are both (1) suitable, i.e.: of the type claimant could reasonably be expected to perform in light of his impaired physical or mental condition, and (2) reasonably available." *Zimmerman*, 137 Ariz. at 582.

¶10        An injured worker must mitigate damages by making a good-faith effort to look for suitable work. *Hoffman*, 61 Ariz. at 314. An injured worker can also satisfy this duty by "conceding his residual capacity to do light work" reasonably available to him. *D'Amico v. Indus. Comm'n*, 149 Ariz. 264, 268 (App. 1986). Here, Ordaz did both. He testified that he tried

to find alternative work and described his efforts. The ALJ found his explanation credible, and we cannot say that conclusion was unreasonable. Also, Ordaz presented evidence through a labor market consultant that he could perform light duty work required of an office cleaner and that such work was reasonably available to him. The ALJ's findings are supported by the record.

¶11 Safelite's argument on appeal is twofold. First, they contend that Ordaz did not make a good-faith effort to find employment. The ALJ disagreed and reasonably found otherwise based on Ordaz's credible testimony. The credibility of witnesses, including the claimant, is determined by the ALJ and "is beyond the limited role of the reviewing court." *Villanueva v. Indus. Comm'n*, 148 Ariz. 285, 288 (App. 1985). Second, Safelite argues that Tichauer's conclusions were foundationally flawed because she did not describe the specific duties of an office cleaner or how Ordaz would perform them, and she did not "exhaust other job possibilities." As the trier of fact, the ALJ considered Tichauer's conclusions and determined the weight to which they were entitled. *See Le Duc v. Indus. Comm'n*, 116 Ariz. 95, 98 (App. 1977). Safelite essentially asks us to reweigh the evidence, which we will not do. *See Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544-45 (1981).

## CONCLUSION

¶12 The evidentiary record supports the administrative law judge's findings. We affirm the award.



AMY M. WOOD • Clerk of the Court
FILED: AA