749 P.2d 389

G.K. TECHNOLOGIES,
Petitioner Employer,

Aetna Casualty & Surety Company,
Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

General Cable Company,
Respondent Employer,

Hartford Accident & Indemnity Company; Twin City Fire Insurance Company c/o Hartford Insurance Group, Respondent Carriers,

Charles Miller, Respondent Employee.

No. 1 CA–IC 3660.

Court of Appeals of Arizona,
Division 1, Department D.

Jan. 19, 1988.

Jones, Skelton & Hochuli by Calvin Harris, Phoenix, for petitioners.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Taylor & Schaar by Don F. Schaar, Phoenix, for respondent employee.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by J. Victor Stoffa, Donald L. Cross, Phoenix, for respondent carriers.

## OPINION

FROEB, Judge.

This is a special action review of a consolidated Industrial Commission award allowing scheduled disability benefits for a November 16, 1982, injury.

## JURISDICTION

On November 16, 1982, while employed as a coiler operator for G.K. Technologies, claimant incurred an industrially related injury to his right upper extremity. The injury occurred when claimant twisted his wrist and thumb while using a wrench to put on a cover for a spool. The claim (first claim) was accepted by Aetna Casualty and Surety Company (Aetna), G.K. Technologies' insurer.

Claimant sustained a second injury to his right upper extremity on January 25, 1983, while employed by General Cable Company. This claim (second claim) was accepted by General Cable Company's insurer, Hartford Accident and Indemnity Company (Hartford).

Claimant also sustained an industrially related injury to his left upper extremity on August 30, 1983, while employed by General Cable Company, which was still insured by Hartford. Hartford accepted the claim (third claim) for this injury.

While the first claim remained open for medical benefits, Hartford closed the second and third claims. Claimant protested both of these closures. Pending a hearing on closure of the second and third claims, Dr. Leonard S. Bodell recommended surgery. However, Dr. Bodell did not identify which injury caused claimant to require surgery. Claimant then requested joinder of the first claim, but the administrative law judge denied this request.

Dr. Bodell subsequently reported that claimant's condition "dates from 1982 [the time of the first injury] ... and any subsequent problems at most were aggravations of the original injury...." Aetna then accepted responsibility for the surgery, which was performed pursuant to Dr. Bodell's recommendation, and provided temporary disability benefits.

The hearing judge then notified claimant's counsel, Hartford's counsel, and the Industrial Commission that further processing of the second claim would be held in abeyance until the injury arising from the first claim became stationary. *See generally All Star Coach, Inc. v. Industrial Comm'n*, 115 Ariz. 335, 565 P.2d 515 (1977). Aetna was not formally notified of this ruling.

On September 19, 1985, while working for General Cable Company, claimant allegedly sustained another injury to his left upper extremity. While the first claim remained open, the second claim suspended and the third claim closed, claimant filed another claim (fourth claim) pursuant to the injury allegedly sustained on September 19, 1985. Hartford denied compensability. Claimant protested this denial and subsequently petitioned to reopen the third claim.

On December 23, 1985, Aetna issued a notice of temporary partial disability on the first claim. On January 6, 1986, Aetna issued notices (hereinafter referred to as "termination notices") closing the first claim with a permanent, partial impairment and an unscheduled disability. Aetna relied on Dr. Bodell's report dated December 30, 1985, rating a thirty-five percent impairment for each upper limb to support its finding of a permanent impairment. Claimant protested both the December 23, 1985, notice and the January 6, 1986, termination notices, asserting a right to continuing temporary benefits.

By notice dated March 18, 1986, the judge notified all parties, including Aetna, that the four claims were consolidated for a May 13, 1986, hearing. On March 24, 1986, however, Aetna issued a notice rescinding the January 6, 1986, termination notices. Aetna assumed that this rescinding notice ousted the Industrial Commission of jurisdiction over the protest of the termination

notices. The effect of the rescission notice is the center of the discussion below.

On April 10, 1986, Aetna's counsel wrote to the judge concerning the rescission. Counsel "presume[d] [that claimant's protest of the termination notices] is moot." He explained that the rescission was issued when Aetna discovered "three subsequent injuries," and that Aetna would issue additional notices once it "sort[ed] through all of the medical in the three subsequent files to try and determine what, if any, permanent impairment is attributable to the 1982 injury."

On April 21, 1986, claimant's counsel wrote to the judge, informing him that the rescission did not, as far as claimant was concerned, resolve all issues pertinent to the termination notices. He urged the judge to consider claimant's protest of the termination notices at the consolidated hearing, asserting that the rescission "simply means that they are taking no position on the record regarding permanent impairment at this time. It is time to do so in view of Dr. Bodell's March 11, 1986, report [supporting a scheduled disability], a copy of which is enclosed." A copy of this letter was mailed to Aetna's counsel. The judge did not respond to either of these two letters. However, a copy of the notice of pre-hearing conference was mailed to Aetna's counsel.

Both claimant and Hartford continued to prepare for the consolidated hearing. Aet-na, assuming that the Industrial Commission had been ousted of jurisdiction over the termination notices, failed to prepare for hearing. Aetna's counsel, at the hearing, denied that the Industrial Commission had jurisdiction over termination of the first claim. The administrative law judge rejected this contention, in part because Aetna had adequate time to prepare for the hearing after receiving notice of the hearing. The judge also ruled for the first time that claimant's April 21, 1986, letter, urging the judge to consider the termination protest at the hearing, constituted a protest of the rescission notice.

Aetna responded by purporting to make a "special appearance" and by demanding to cross-examine the medical witnesses subpoenaed by Hartford and claimant. The judge ruled that Aetna had not preserved the right to cross-examine these experts, that Dr. Bodell's report was sufficient to prove impairment, and that medical testimony on the first claim was unnecessary. Relying on Dr. Bodell's reports, the judge disposed of the first claim by awarding scheduled disability benefits for a thirty-five percent right upper extremity impairment, which he affirmed on administrative review. This special action followed. Aetna and G.K. Technologies argue that Aetna's timely rescission of the termination notices ousted the Industrial Commission of jurisdiction to adjudicate termination of the first claim. We disagree.[1]

1. *Arizona Public Service Co. v. Industrial Comm'n*, 133 Ariz. 358, 651 P.2d 886 (App.1982), and *Church of Jesus Christ of Latter Day Saints v. Industrial Comm'n*, 150 Ariz. 495, 724 P.2d 581 (App.1986), both relied upon by petitioners, are distinguishable from the present case. *Arizona Public Service* dealt with the ability of the administrative law judge to dismiss a claim, where claimant withdrew his own request for a hearing in an attempt to bind the self-insured employer to an erroneous notice. The court, in *Arizona Public Service*, reserved judgment on the effect of the self-insured employer's notice purporting to rescind the original notice of claim status. *Arizona Public Service*, 133 Ariz. at 364 n. 1, 651 P.2d at 892 n. 1. Furthermore, the rescission notice was untimely. Thus, although the self-insured employer was able to avoid the consequences of *res judicata*, finality principles were at issue. *See Arizona Public Service*, 133 Ariz. at 363, 651 P.2d at 891.

In *Latter Day Saints*, the carrier's attempted rescission was issued more than ninety days after its original notice, and, thus, *res judicata* was applicable. *Latter Day Saints*, 150 Ariz. at 496, 724 P.2d at 582. Further, the claimant in *Latter Day Saints* did not object to the original notice of claim status. *See Latter Day Saints*, 150 Ariz. at 497, 724 P.2d at 583. Thus, *Latter Day Saints* did not consider the effect of an unresolved dispute on a carrier's power to rescind a prior notice within the protest period.

Petitioners rely on language in the *Latter Day Saints* case to the effect that "both the claimant and the carrier may void the binding effect of a Notice of Claim Status within [the 90–day statutory period]—the claimant by filing a request for hearing and the carrier by simply issuing a new Notice." *Latter Day Saints*, 150 Ariz. at 498, 724 P.2d at 584. We are persuaded by the observation of respondents in this regard. To suggest that a carrier may void the binding

Petitioners correctly state that the Workers' Compensation Act gives carriers the authority to process claims. *See* A.R.S. § 23–1061(F), (G). For example, the carrier makes the initial determination as to whether a claim is compensable. Additionally, the amount of compensation paid may generally be modified without the necessity of a formal award by the Industrial Commission. The carrier also determines when to terminate compensation. *Holmes Tuttle Broadway Ford v. Industrial Comm'n,* 27 Ariz.App. 128, 130, 551 P.2d 577, 579 (1976); A.R.S. § 23–1061(G). On the other hand, the Industrial Commission's primary role under the statutory scheme is to adjudicate disputes between carriers and claimants. *Eversten v. Industrial Comm'n,* 117 Ariz. 378, 381, 573 P.2d 69, 72 (App.1977), *approved and adopted,* 117 Ariz. 342, 572 P.2d 804 (1977); *see* A.R.S. §§ 23–941 to –943. When an employee objects to a notice of claim status, he may file a request for hearing. When a timely request for hearing is filed, the Industrial Commission gains jurisdiction over all issues pertinent to the notice. *Arizona Public Service Co. v. Industrial Comm'n,* 133 Ariz. at 362, 651 P.2d at 890. This division of labor between carriers and the Industrial Commission spares the Industrial Commission the expense of administering undisputed matters. It also ensures a neutral arbiter when a dispute between a carrier and an injured employee arises. *Eversten,* 117 Ariz. at 381, 573 P.2d at 72.

We hold that once a party files a timely request for a hearing pursuant to A.R.S. § 23–941, and the Industrial Commission thereby gains jurisdiction over the matter raised in the request, the opposing party may not unilaterally oust the Industrial Commission of its jurisdiction. To allow the opposing party to oust the Industrial Commission of jurisdiction would permit that party to defeat the statutory scheme whereby the Industrial Commission adjudicates disputes between carriers and claimants. *See Eversten,* 117 Ariz. at 378, 573

P.2d at 69; A.R.S. §§ 23–941 to –943; *cf. Marriott v. Industrial Comm'n,* 1 CA–IC 3521 (filed Oct. 7, 1986) (affirming an award accepting claimant's withdrawal of her own timely request for hearing and dismissing the untimely request of the self-insured employer), *rev. granted,* CV–87–0037–PR (Mar. 24, 1987).

As the hearing judge cogently observed in his decision upon review, Aetna's rescission resolved nothing. Thus, to have allowed the rescission would have wasted already expended Industrial Commission resources, only to leave the dispute between Aetna and claimant unresolved. We, conclude, therefore, that Aetna could not deprive the Industrial Commission of jurisdiction by rescinding the termination notices.

Protest of the rescission notice was unnecessary since the Industrial Commission retained jurisdiction over the prior protest of the termination notices. Therefore, we need not address Aetna's argument that it had inadequate notice that claimant's letter constituted a protest of the rescission notice.

## AETNA'S RIGHT TO CROSS–EXAMINE MEDICAL EXPERTS

As noted earlier, following Aetna's March 24, 1986, rescission and the resultant letters to the judge concerning the effect of that rescission, claimant and Hartford continued to prepare for the consolidated hearing. Claimant submitted medical documents and requested a subpoena for Dr. Bodell. A copy of this request was sent to Aetna's counsel. Hartford requested a subpoena for Dr. MacCollum and a subpoena to cross-examine Dr. Bodell. A copy of the first request was sent only to claimant's counsel, while copies of the second were sent to both claimant's counsel and Aetna's counsel. Subpoenas were issued for Drs. Bodell and MacCollum. They were unable to appear at the May 13, 1986,

effect of a prior notice by its rescission is not to say that the rescission ousts the Industrial Commission of jurisdiction where there is an outstanding, unresolved request for hearing.

The issue in this case, therefore, has not been previously decided.

hearing, but appeared at a continued hearing on July 31, 1986.

On the day of the hearing, Aetna purported to make a "special appearance" and demanded to cross-examine Drs. Bodell and MacCollum. The judge ruled that, because Aetna failed to issue subpoenas to cross-examine the doctors, Aetna had not preserved this right; that Dr. Bodell's report, submitted by claimant, supported a finding of permanent impairment; and, that medical testimony on the first claim was unnecessary.

As to the second claim, claimant had no evidence to present, but Aetna asserted that it was entitled to prove that the second injury was responsible for any impairment to the right upper extremity. The judge agreed to consider a January, 1984, consultation report, but again ruled that Aetna had waived cross-examination.

The third and fourth claims could not be resolved without the testimony of Drs. Bodell and MacCollum. Claimant requested severance of these claims. Aetna objected that it had the right to appear at the continued hearing and cross-examine concerning the first claim. The judge granted the severance and ruled that Aetna would not be allowed to cross-examine Drs. Bodell and MacCollum concerning the right upper extremity.

The continued hearing was restricted to the third and fourth claims. Apparently, the judge first advised Aetna that it could make an offer of proof, but later denied Aetna the opportunity to do so. After the hearing was closed, Aetna submitted an offer of proof by letter.

■ The judge then issued the award. Concerning the first injury claim, the judge accepted Dr. Bodell's reports and awarded scheduled disability benefits for a 35 percent right upper extremity impairment. As for the remaining claims, the judge denied the claimant any benefits. Aetna argues that the judge denied it the right of cross-examination when he refused to allow Aetna to cross-examine Drs. Bodell and Mac-Collum. We disagree.

The relevant procedural rule permits a party to file medical reports within twenty-five days before the first scheduled hearing. *See* A.C.R.R. R4–13–155(A). It further provides as follows:

C. Any party desiring to cross-examine the author of any ... report ... so filed shall request a subpoena in accordance with the provisions of R4–13–141.

D. If timely request for subpoena is not made pursuant to this rule and the provisions of R4–13–141, the right to cross-examine the author of any such medical report ... *shall be deemed waived and the documents may be considered to be in evidence.*

A.C.R.R. R4–13–155(A) (emphasis added).

In the present case, claimant timely submitted the reports of Dr. Bodell and Aetna admittedly failed to request a subpoena to cross-examine Dr. Bodell. Therefore, Aetna waived the right to cross-examine Dr. Bodell, and the reports were properly in evidence.

■ Aetna relies on the consolidation of the four claims to avoid its waiver of cross-examination. We do not agree that the consolidation relieved Aetna of its duty to comply with the procedural rules. The claims were consolidated to permit an orderly hearing. The two pairs of claims involved different extremities; the first and second claim involved the right upper extremity, while the third and fourth claims involved the left upper extremity. The need for a continued hearing on the latter pair of claims did not permit Aetna to offer evidence on the unrelated first pair. Aetna could either have moved before the hearing for a dismissal of the first claim for lack of jurisdiction or reserved its jurisdictional defense and prepared to present its evidence at hearing. Instead, it failed to prepare for hearing in reliance on its jurisdictional defense, and then attempted to save itself by arguing that consolidation gave it a right to cross-examine the other parties' witnesses. Aetna cannot now complain of the situation which it created.

## DID THE HEARING JUDGE PREJUDGE THE EVIDENCE?

Aetna also argues that the judge improperly prejudged the evidence. To the contrary, the judge did not evaluate the potential effect of cross-examination because it had been waived. Rather, he merely determined that Dr. Bodell's testimony was unnecessary for claimant to establish his case. Aetna has never argued that Dr. Bodell's reports do not support the award, and the judge properly considered the reports.

## WAS THE HEARING JUDGE BIASED?

 Aetna argues, finally, that the judge was biased. We again disagree. The judge simply took a position on the application of the procedural rules and held to that position. Aetna demanded rights which had been waived. Rejection of this demand does not constitute bias.

For the foregoing reasons, we affirm the award.

HAIRE, C.J., and EUBANK, J., concur.