894 P.2d 726

DEPARTMENT OF CORRECTIONS,
Petitioner Employer,

State Compensation Fund,
Petitioner Carrier,

v.

INDUSTRIAL COMMISSION OF
ARIZONA, Respondent,

Sharon Smith, Respondent Employee,

Special Fund Division, Respondent
Party in Interest.

No. 1 CA–IC 94–0006.

Court of Appeals of Arizona,
Division 1, Department C.

April 27, 1995.

As Corrected June 2, 1995.

Steven C. Lester, P.C., Phoenix, for petitioners Employer and Carrier.

Anita R. Valainis, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Jerome, Gibson, Stewart, Friedman & Stevenson, P.C. by Don F. Schaar, Phoenix, for respondent Employee.

Laura L. McGrory, The Industrial Com'n of Arizona, Phoenix, for respondent Party in Interest.

OPINION

GRANT, Judge.

■ This is a special action review of an Arizona Industrial Commission ("Commission") Decision Upon Hearing and Findings and Award ("Award") and Decision Upon Review affirming this Award. The Award granted permanent partial disability benefits but denied apportionment of these benefits between Petitioner Carrier ("Fund") and Respondent Real Party in Interest ("Special Fund Division")[1] under Ariz.Rev.Stat.Ann.

---

1. Although the Commission generally lacks standing to appear as an advocate, it has standing in this case to defend the integrity of the special fund. *See Evertsen v. Industrial Comm'n,* 117 Ariz. 378, 382, 573 P.2d 69, 73 (App.1977), *approved and adopted,* 117 Ariz. 342, 572 P.2d 804 (1977). Respondent employee is a party to this special action, but she has not actively par-

("A.R.S.") section 23–1065(C) (Supp.1994). The Administrative Law Judge ("A.L.J.") found that Respondent Employee ("Claimant") has a cardiac arrhythmia rating a 15% whole person impairment under the AMA Guides. *See generally* Guides to the Evaluation of Permanent Impairment 194–96 (4th ed. 1994) ("AMA Guides"). The A.L.J. nevertheless accepted a medical expert's opinion that this condition is not a cardiac disease because it is a "trivial problem that is well-controlled by medication." On this basis, the A.L.J. concluded that Claimant's arrhythmia is not cardiac disease under subpart (3)(c) of section 23–1065(C).

## I. ISSUE

The Fund presents one issue: whether a cardiac arrhythmia rating a 15% impairment under the AMA Guides is a cardiac disease under the apportionment statute. Because section 23–1065(C) requires an impairment to be rated under the AMA Guides, and a 15% impairment is a serious condition, we conclude that a cardiac impairment rating 15% under the AMA Guides is a serious condition for the purpose of defining "cardiac disease" under subpart (3)(c) of section 23–1065(C). We accordingly set aside the Award.

## II. PROCEDURAL HISTORY

In April 1989, while working as a correctional officer for Respondent Employer ("DOC"), Claimant injured her lower back. After administrative processing, hearings ensued to address the Fund's claim for apportionment.[2] The Fund presented testimony from Marc L. Lee, M.D.; the Special Fund Division presented testimony from Ira Ehrlich, M.D.

Both experts diagnosed cardiac arrhythmia, a heart beat irregularity, which in Claimant's case has been controlled by medication. They, however, found no organic heart disease or other abnormality to explain Claimant's arrhythmia.[3] Both experts acknowledged that this arrhythmia rated a 15% whole person impairment under the AMA Guides, but they also disagreed with the AMA rating standards.[4] Furthermore, both experts agreed that if "disease" means an abnormality of structure or function, then an arrhythmia is an abnormality of heart function and therefore is a cardiac disease.[5] In Dr. Ehrlich's opinion, however, Claimant's arrhythmia "is a trivial problem that is well-controlled by medication. I certainly wouldn't want to call this a disease."[6]

The A.L.J. then issued the Award denying apportionment. He found that Dr. Lee testi-

ticipated because the apportionment dispute is between the Fund and Special Fund Division.

2. Claimant's earning capacity was hotly contested below; the Fund contended that Claimant had no loss; Claimant contended that she had a total loss. The A.L.J. ultimately rejected both extremes and found a partial loss. The parties have accepted this part of the Award on review. They, however, have not addressed the disposition of this part of the Award if we conclude that the Fund may be entitled to apportionment. We assume that if we set aside the apportionment part of the Award, we must set aside the Award as a whole. *See* A.R.S. § 23–951(D) (1983).

3. Dr. Ehrlich for this reason diagnosed an idiopathic arrhythmia. Dr. Lee, on the other hand, testified that he did not know if extrinsic factors such as caffeine, emotional stress, or other medications contributed to Claimant's arrhythmia.

4. Dr. Lee would rate an impairment under 10%, Dr. Ehrlich implied that he would not rate any impairment for this type of arrhythmia. Furthermore, although both experts would restrict

Claimant's diet and prescribe medication to control her arrhythmia, they would not otherwise functionally restrict her. Dr. Ehrlich, however, acknowledged that the medication that Claimant took, rather than the arrhythmia itself, would disqualify her from obtaining a license to drive some commercial trucks.

5. The Fund's counsel did not refer to the source of this definition during the hearings. On administrative review, the Fund for the first time referred to Dorland's Illustrated Medical Dictionary (27th ed. 1988) ("Dorland's") as the source of the definition. In its Opening Brief, the Fund for the first time has provided copies of the Dorland's definitions of "cardiac" and of "disease." In its Reply Brief, the Fund for the first time refers to and provides copies of the Dorland's definition of "heart disease," which is a subdefinition of the term "disease."

6. Dr. Lee, on the other hand, conceded that everyone has periodic racing of the heart and that "for all of us to have periodic racing and be labeled with quote, a disease, obviously would be unfair." He, however, reiterated that Claimant's arrhythmia "does reflect a cardiac disease."

fied that Claimant's arrhythmia is a cardiac disease, that Dr. Ehrlich testified that it is not, and resolved this conflict in favor of Dr. °Ehrlich's opinion:

> On the apportionment claim, the issue is whether applicant's condition constitutes a "cardiac disease" within the meaning of A.R.S. § 23–1065(C)(3). It is assumed that for the purposes of this analysis that the condition would be deemed to result in a 10% or greater impairment if it is in fact a disease and that the employer had acquired knowledge of the impairment. Dr. Lee testified that the arrhythmia is a "cardiac disease." Dr. Ehrlich testified to the contrary. The term "cardiac disease" must be defined as a term of art and not as a generic description. *Salt River Project v. Industrial Commission,* 172 Ariz. 477, 837 P.2d 1212 (App.1992). While the definition of what a "disease" is may be, strictly speaking, a legal one the opinions of qualified practitioners such as Dr. Lee and Dr. Ehrlich are as a practical matter necessary to resolve an issue such as this. Dr. Lee testified essentially that anything that is "abnormal to heart function" is a cardiac disease. Dr. Ehrlich disagrees, testifying that applicant's condition is controlled by medication in her case and that the condition can be controlled by diet in some cases. While, in the view of Dr. Ehrlich, the condition may be slightly abnormal or irregular, it does not constitute a disease. Adopting a "strict construction" point of view, it is concluded that Dr. Ehrlich's construction of the phrase "cardiac disease" as it applies to applicant's condition is the most sensible in interpreting the meaning of the statute. Accordingly it is found that applicant does not have a "cardiac disease."

On administrative review, the A.L.J. summarily affirmed the Award. The Fund then brought this special action.

## III. DISCUSSION

### A. Introduction

Among other requirements, a carrier claiming apportionment under section 23–1065(C) must prove that a preexisting, nonindustrial impairment rates 10% or greater under the AMA Guides and constitutes a hindrance or obstacle to employment or to reemployment. A.R.S. § 23–1065(C); *see also, e.g., Special Fund Div. v. Industrial Comm'n,* 182 Ariz. 341, 345–346, 897 P.2d 643, 647–648 (App.1994). Furthermore, an otherwise qualifying impairment must be "due to one or more" of the conditions that are listed in subpart (3). A.R.S. § 23–1065(C)(3); *see also Schuff Steel Co. v. Industrial Comm'n,* 181 Ariz. 435, 446, 891 P.2d 902, 912 (App.1994) (rev. den. 3/21/95). This list includes a condition identified as "cardiac disease." *Id.* (C)(3)(c).

In the current case, the A.L.J. denied the Fund's apportionment claim because he concluded that Claimant's cardiac arrhythmia is not a cardiac disease under subpart (3)(c). The Fund suggests that this implies that it would be entitled to apportionment if the A.L.J. erroneously defined "cardiac disease." To the contrary, we agree with the Special Fund Division that the A.L.J. did not address the hindrance to employment requirement. Consequently, even if the A.L.J. erroneously defined "cardiac disease," the Fund would be entitled to apportionment only if it establishes that Claimant's arrhythmia is a hindrance or obstacle to employment or to reemployment.

### B. Definition Of "Cardiac Disease"

The Fund asserts that the A.L.J. could not accept Dr. Ehrlich's opinion that Claimant's arrhythmia is not a cardiac disease because it is a "trivial problem that is well-controlled by medication." It contends that the term "disease" has "acquired a peculiar and appropriate meaning" equivalent to the medical dictionary definitions of the material terms.[7]

---

**7.** The Fund has cited the following definitions: (1) "cardiac" means "pertaining to the heart," Dorland's at 273; (2) "disease" means "any deviation from or interruption of the normal structure *or function* of any ... organ ... of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology and prognosis may be known or unknown," *id.* at 481 (emphasis added); and (3) "heart d[isease]" means "any organic, mechanical *or functional* abnormality of the heart; it may be valvular, myocardial, or neurogenic," *id.* at 486

Alternatively, even if a cardiac abnormality must be serious to constitute a disease, the Fund argues that an impairment rating 15% under the AMA Guides is a serious abnormality.

For the following reasons, we agree with the Fund's alternative argument. We accordingly need not determine whether the medical dictionary definition is conclusive.[8] Rather, we assume *arguendo* that the medical definition of "disease" connotes a serious abnormality.

Both medical experts acknowledged that Claimant's cardiac arrhythmia rated a 15% whole person impairment under the AMA Guides. *See* Guides 194–96. A review of the AMA Guides confirms that a rating of 10–30% applies when

> (1) the patient is asymptomatic during ordinary daily activities and a cardiac arrhythmia is documented by ECG; *and* (2) moderate dietary adjustment, or the use of drugs ... is required to prevent symptoms related to the cardiac arrhythmia; *or* (3) the arrhythmia persists and there is organic heart disease.

*Id.* at 194. Thus, a rating of 10% or greater applies even without organic heart disease or functional effects if medication is necessary to control symptoms of the arrhythmia.[9]

Both experts, however, disagreed with the rating standards under the AMA Guides. In the context of the rating of an *industrially related impairment, our supreme court has permitted medical opinion to supersede the AMA Guides. See, e.g., W.A. Krueger Co. v. Industrial Comm'n,* 150 Ariz. 66, 67–68, 722 P.2d 234, 235–36 (1986) (concluding that AMA Guides are mere guidelines and affirming award based on expert

opinion contrary to AMA Guides). But when the legislature amended the apportionment provisions in section 23–1065, *see generally Salt River Project v. Industrial Comm'n,* 172 Ariz. 477, 480, 837 P.2d 1212, 1215 (App. 1992), it specifically provided that "the impairment [giving rise to apportionment] equals or exceeds a ten per cent permanent impairment *evaluated in accordance with the American medical association guides to the evaluation of permanent impairment....*" A.R.S. § 23–1065(C) (emphasis added).

Because it appears the legislature intended the AMA Guides to be definitive for the rating of the preexisting impairment, an A.L.J. cannot accept a medical expert's opinion disregarding the rating for the purpose of defining the listed conditions under subpart (3).

This court addressed a comparable problem in *Aguiar v. Industrial Comm'n,* 165 Ariz. 172, 797 P.2d 711 (App.1990). In *Aguiar,* the A.L.J. resolved a medical conflict by accepting an expert's opinion that the claimant's exertion at work did not contribute to his heart attack because customary exertion cannot contribute to an infarction and the claimant's level of exertion was customary for him. *Id.* at 173, 178, 797 P.2d at 712, 717. This court concluded that the A.L.J. erroneously accepted this opinion because the legislature had determined that customary exertion may cause an infarction:

> What may not be accepted, however, is causal testimony grounded in the premise that customary stress or exertion *cannot* cause a heart attack. This question has been preclusively resolved to the contrary

(emphasis added). We note that Dorland's also defines "Bouveret's d[isease]" to mean "paroxysmal tachycardia." *Id.* at 482. Dr. Ehrlich classified Claimant's arrythmia as a paroxysmal ventricular tachycardia.

8. We also note that the Fund argues that the AMA Guides define arrhythmia as a cardiac disease because the index lists arrhythmias under the heading of cardiac diseases. Guides at 326.

9. We note, however, that the AMA Guides state that "[a]n arrhythmia is defined as one or more heart beats generated at a site other than the

sinus node. An impulse that is generated in the sinus node but is not transmitted normally ... is considered an arrhythmia of the conduction defect type." *Id.* Dorland's on the other hand, defines "arrhythmia" to mean "any variation from the normal rhythm of the heart beat, including sinus arrhythmia, premature beat, heart block, atrial fibrillation, atrial flutter, pulsus alternans, and paroxysmal tachycardia." Dorland's at 127. Whether or not paroxysmal tachycardia is a type of arrhythmia that is rateable under the AMA Guides is a purely medical question about which we express no opinion.

in A.R.S. § 23–1043.01(A), and the Commission is bound to accept the legislature's resolution.

*Id.* at 179, 797 P.2d at 718.

■ Similarly, in the current case, the A.L.J. purported simply to resolve a medical conflict concerning whether Claimant's cardiac arrhythmia is a cardiac disease. Dr. Ehrlich, however, did not suggest that a 15% impairment is a trivial condition. To the contrary, it exceeds one of the statutory standards of seriousness under section 23–1065(C).[10] Dr. Ehrlich instead disagreed with the rating of Claimant's arrhythmia under the AMA Guides. For this same reason, he disagreed that this cardiac abnormality is sufficiently serious to constitute a disease.

If the AMA Guides are definitive for the rating of the preexisting impairment, this rating is equally definitive for the purpose of defining the listed conditions under subpart (3). A 15% impairment is sufficiently serious to constitute a disease. Consequently, Claimant's arrhythmia is a cardiac disease under subpart (3)(c) of section 23–1065(C). We accordingly set aside the Award accepting contrary medical opinion.

NOYES, P.J., and GARBARINO, J., concur.

---

10. As we noted above, the legislature imposed one further standard of seriousness for apportionable impairments: the impairment must be "of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed...." A.R.S. § 23–1065(C). The Model Act from which section 23–1065(C) is derived includes a substantially similar standard. *See Salt River Project,* 172 Ariz. at 480–81 & nn. 3–4, 837 P.2d at 1215–16 & nn. 3–4. The Model Act, however, does not have an AMA Guides rating standard comparable to section 23–1065(C). As also noted above, the A.L.J. in the current case did not determine whether Claimant's arrhythmia satisfies the hindrance requirement.