IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

ADVANTAGE POOL & SPA PLUMBING, INC.,
*Plaintiff/Appellant*,

*v.*

KIRK WILLIAM MILES, et al.,
*Defendants/Appellees*.

No. 1 CA-CV 25-0129

FILED 01-14-2026

Appeal from the Superior Court in Maricopa County
No.  CV2023-092121
The Honorable Rodrick Coffey, Judge

**AFFIRMED**

COUNSEL

Richardson & Richardson, P.C., Mesa
By William R. Richardson
*Counsel for Plaintiff/Appellant*

Kirk William Miles, Villa Park, California
*Defendant/Appellee*

Arizona Attorney General's Office, Phoenix
By Charles Hover III
*Counsel for Defendant/Appellee Arizona Registrar of Contractors*

_____

**OPINION**

Judge Andrew J. Becke delivered the opinion of the Court, in which Presiding Judge David B. Gass and Judge Michael J. Brown joined.

_____

**B E C K E**, Judge:

¶1        Advantage Pool & Spa Plumbing, Inc. ("Advantage Pool") appeals the superior court's award of compensation from the contractors' recovery fund to Kirk William Miles. The court's award followed a similar ruling from the Office of Administrative Hearings ("OAH") and, before that, the Registrar of Contractors ("ROC"). Advantage Pool argues that the superior court erred in finding that Miles could claim against the fund. For the reasons below, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        Miles hired Advantage Pool to install a swimming pool at his home in Lake Havasu City in 2016. Miles has another home in California but frequently travels to his home in Lake Havasu City and intends to retire there.

¶3        Miles was not satisfied with Advantage Pool's work, and he eventually filed a complaint with the ROC in 2019. In 2020, the ROC found that the pool dimensions were not within industry-allowable tolerances and issued a decision and order for those violations against Advantage Pool. In 2022, Miles filed a recovery claim against Advantage Pool, in which the ROC found Miles's damages to be $26,500, to be paid from the contractors' recovery fund. Advantage Pool requested an OAH administrative hearing on the ROC's award. After a hearing, the OAH also awarded Miles $26,500, essentially affirming the ROC's award.

¶4        Advantage Pool appealed the OAH decision to the superior court, arguing that Miles was not qualified to claim against the contractors' recovery fund. To make a claim against the fund, a homeowner must: (1) "[a]ctually occup[y] or intend[] to occupy" the home as their primary residence; and (2) have "proceeded against" the bond prior to claiming against the fund. A.R.S. §§ 32-1132(B)(1)(b), -1133.01(F). Advantage Pool argued that Miles failed both requirements.

2

¶5        The superior court found that Miles was qualified to make a claim against the fund. First, he satisfied § 32-1132(B)(1)(b) because he intends to live in the Lake Havasu City home as his primary residence when he retires. Second, the court found that Miles proceeded against the bond, as § 32-1133.01(F) requires, by submitting a written claim to the bonding company. Finally, the superior court found that Miles was entitled to an award but reduced the award to $16,500.

¶6        Advantage Pool timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-913 and -2101(A)(1).

## DISCUSSION

¶7        Advantage Pool brings two arguments on appeal. First, it argues that Miles did not have the requisite intent to live in the Lake Havasu City home as his primary home, as is required to claim against the contractors' recovery fund. Second, it argues that merely submitting a written claim to the bonding company is not sufficient. Instead, Miles had to file a lawsuit to proceed against a bond as a precursor to making a claim.

I.        **The Superior Court Did Not Abuse Its Discretion in Finding That Miles Met the Requirements of § 32-1132(B)(1)(b).**

¶8        Advantage Pool argues that Miles did not meet the requirements of § 32-1132(B)(1)(b), which require that a claimant "[a]ctually occupies or intends to occupy" the realty "as the individual's primary residence." Advantage Pool contends that Miles's intent to make the Lake Havasu City home his primary residence was too distant and unspecified to satisfy the statute. "We review the [superior] court's findings of fact for an abuse of discretion." *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 478, ¶ 22 (App. 2015). An abuse of discretion occurs when there is no "competent evidence to support the decision" in the record. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009). "We defer to the court's factual findings unless they are clearly erroneous or unsupported by substantial evidence." *McClendon v. McClendon*, 243 Ariz. 399, 401, ¶ 8 (App. 2017).

¶9        During the bench trial in superior court, Miles's wife testified that Miles and his children lived at the Lake Havasu City home full-time from March until June 2020. She also said they built the Lake Havasu City home with the intention of residing there once they retire. Miles similarly testified that the home "is planned for [a] retirement home and it is currently used as a vacation home until we can retire."

**¶10** The superior court found that Miles's "uncontroverted testimony also indicate[d] that Miles intend[ed] to make the [Lake Havasu City home] his primary residence in the future." This finding is supported by substantial evidence in the record. The statute's residential requirement does not contain a temporal qualifier. It only requires that the owner must intend to occupy the property as a primary residence. *See* A.R.S. § 32-1132(B)(1)(b). Based on the evidence, the superior court did not abuse its discretion in finding that Miles met the requirements of § 32-1132(B)(1)(b).

## II. The Superior Court Did Not Err in Finding That § 32-1133.01(F) Does Not Require Miles to File Suit to Proceed Against the Bond.

**¶11** Advantage Pool next argues that a claimant must file a lawsuit under § 32-1133.01(F), which requires a claimant to have "proceeded against any existing bond" to claim against the contractors' recovery fund. Here, Miles sent a written claim to the bond company but did not file suit. We review issues of statutory interpretation *de novo*. *State v. Rodriguez*, 251 Ariz. 90, 94, ¶ 8 (App. 2021).

### A. We will consider the ROC's answering brief.

**¶12** The ROC filed an answering brief with this court, acknowledging that it "took no substantive positions on the issues in the superior court," but asking that we consider its arguments on appeal. We have previously noted that "agencies serving only an adjudicatory function prior to appeal generally lack standing to later participate when their decisions are appealed." *Williams v. Ariz. Dep't of Econ. Sec.*, 1 CA-UB 23-0369, 2025 WL 1466188, at *6, ¶ 37 (Ariz. App. May 22, 2025) (mem. decision). An agency's lack of standing is especially apparent when it appears only to defend its own decision and reasoning. *See id.* at ¶¶ 34–37. However, an agency's "authority or duty to appear is limited to those instances where, as an advocate, it has a legitimate interest to propose or defend." *Evertsen v. Indus. Comm'n*, 117 Ariz. 378, 382 (App. 1977). An agency may have a "legitimate interest" when "defending the integrity of the [agency fund]," defending "the [agency's] procedures," or assisting "the Court in reaching a correct result where matters involving the general interest of the [agency] in carrying out its statutory authority or policies are concerned." *Id.* (quoting *St. Luke's Hosp. v. Indus. Comm'n*, 114 Ariz. 118, 122 (App. 1976)).

**¶13** Here, the ROC's arguments concern the procedure parties must follow before they can make a claim against the residential contractors' recovery fund. A.R.S. § 32-1133.01(F). The ROC administers

this fund for the benefit of claimants damaged by licensed contractors. A.R.S. § 32-1132(A). Because the ROC's arguments here "defend the integrity" of the residential contractors' recovery fund, the ROC has a legitimate interest in bringing its arguments before this court. *See Evertsen*, 117 Ariz. at 382. Therefore, we will consider its arguments.

### B. Section 32-1133.01(F) does not require Miles to file a lawsuit.

¶14        In interpreting statutes, "we strive 'to effectuate the legislature's intent.'" *4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385, ¶ 5 (2022) (quoting *Welch v. Cochise Cnty. Bd. of Supervisors*, 251 Ariz. 519, 523, ¶ 11 (2021)). "When a statute's plain language is unambiguous in context, it is dispositive." *In re Drummond*, 257 Ariz. 15, 18, ¶ 5 (2024). We give statutory terms their commonly accepted meaning "unless the legislature has offered its own definition of the words or it appears from the context that a special meaning was intended." *Planned Parenthood Ariz., Inc. v. Mayes*, 257 Ariz. 137, 142, ¶ 16 (2024) (quoting *State v. Reynolds*, 170 Ariz. 233, 234 (1992)). If the statutory term is ambiguous, then "we may use alternative methods of statutory construction, including examining the rule's historical background, its spirit and purpose, and the effects and consequences of competing interpretations." *Planned Parenthood Ariz., Inc.*, 257 Ariz. at 142, ¶ 17.

¶15        Under the statute, "[a] claimant to the residential contractors' recovery fund pursuant to this section must show that the claimant has proceeded against any existing bond covering the residential contractor." A.R.S. § 32-1133.01(F). The legislature did not define the term "proceeded against."

¶16        A case concerning mortgage banker bonds required by A.R.S. § 6-943(H) is instructive. There, we construed "proceeded against" a bond to mean having filed a claim against the bond. *Great American Mortgage, Inc. v. Statewide Insurance Co.*, 189 Ariz. 123, 124 (App. 1997) ("To collect, Employees proceeded against the $100,000 Arizona license bond which Security was required to post in order to be licensed as a mortgage banker in Arizona. . . . When [the bond's issuer] denied their claim against the bond, Employees filed this action against it."). Although *Great American Mortgage* does not involve contractor's bonds under § 32-1133.01(F), it does suggest "proceeding against" a bond includes filing a claim against a bond, even where a claimant has not sued.

¶17 Advantage Pool contends that A.R.S. § 32-1152(E), which refers to "maintain[ing] an action at law," should lead us to conclude a lawsuit is required by § 32-1133.01(F). We disagree. Section 32-1152(E) states that "[t]he person seeking recovery from the bond or cash deposit shall maintain an action at law against the contractor if claiming against the cash deposit or against the contractor and surety if claiming against the surety bond." However, § 32-1133.01(F) does not mention § 32-1152(E) or refer to "maintain[ing] an action at law" or filing a lawsuit. We will not read into § 32-1133.01(F) the requirement of filing a lawsuit when it does not appear in the text. Indeed, the presence of the lawsuit requirement in § 32-1152(E) and its absence from § 32-1133.01(F) suggests that the omission of that requirement was intentional. *Ariz. Bd. of Regents ex rel. Univ. of Ariz. v. State ex rel. State of Ariz. Pub. Safety Ret. Fund Manager Adm'r*, 160 Ariz. 150, 157 (App. 1989) ("Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded.").

¶18 Also, as the ROC points out, Advantage Pool's interpretation of "proceeded against" would force claimants to file lawsuits "even if the bond was expired or exhausted." This interpretation would also preclude claimants from recovering from the fund when a bond company made payment without the claimant filing suit.

¶19 The rule of construing statutes to avoid any part being superfluous also cuts against Advantage Pool's proposed interpretation. Section 32-1152(E) also states:

> If the corporate surety desires to make payment without awaiting court or registrar action, the amount of any bond filed in compliance with this chapter shall be reduced to the extent of any payment or payments made by the corporate surety in good faith thereunder. Any such payments shall be based on priority of written claims received by the corporate surety before court or registrar action.

If a claimant must file suit against the surety as Advantage Pool argues, this portion of the statute would be meaningless. *See State v. Serrato*, __ Ariz. __, __, ¶ 19, 568 P.3d 756, 761 (2025) ("Courts read statutes in harmony to avoid leaving any provision 'superfluous, void, contradictory or insignificant.'") (quoting *State v. Deddens*, 112 Ariz. 425, 429 (1975)).

¶20        The legislature's recognition that sureties make voluntary payments before suit suggests Advantage Pool's position is incorrect. In *Weitekamp v. Fireman's Fund Insurance Co.*, we held that surety companies under an earlier version of A.R.S. § 32-1152(E) can make voluntary payments before any court action occurs. 147 Ariz. 274, 276 (App. 1985) ("[T]he legislature intended that a surety make such voluntary payments prior to any court's action concerning the bond, whether that action is an injunction or judgment itself, and not limiting its right to make such payments only before the filing of a lawsuit.").

¶21        A corporate surety has the power to make payment without filing a lawsuit. *See id.* If a surety exercised this power and made a payment to a claimant before suit was filed, then the claimant could never claim against the contractors' recovery fund because they would not have "proceeded against" the bond as Advantage Pool contends. When "proceeded against" means to file a claim against a bond, on the other hand, then the surety's power to pay out to a claimant before suit does not hinder the claimant's ability to claim against the fund. *See Serrato*, 568 P.3d at 761, ¶ 19 (noting that courts read statutes to avoid contradictory provisions).

¶22        Furthermore, the legislature's use of "maintain an action at law" in A.R.S. § 32-1152(E) shows that the legislature knows the difference between that phrase and "proceeded against any existing bond." When a statute "has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012). If the legislature wanted filing a suit or maintaining an action at law to be required under § 32-1133.01(F), it could have said so. Instead, it used the phrase "proceeded against," indicating a different requirement.

¶23        The language of the statute shows a claimant need not file a lawsuit to proceed against a bond. Therefore, the superior court did not err in finding that Miles proceeded against the bond by filing a written claim to the bond company.

III.    **Miles Needed to Cross-Appeal the Superior Court's Denial of Attorneys' Fees.**

¶24        Miles seeks to appeal the denial of his attorneys' fees at the superior court, but this argument requires a cross-appeal. A cross-appeal is required when "the appellee seeks to attack the judgment with a view of either enlarging his rights thereunder or lessening the rights of his

adversary." *CNL Hotels & Resorts, Inc. v. Maricopa County*, 230 Ariz. 21, 25, ¶ 20 (2012) (cleaned up). Here, Miles seeks to attack the judgment and enlarge his own rights under it by requesting an award of attorneys' fees. *See Engel v. Landman*, 221 Ariz. 504, 510, ¶ 17 (App. 2009) ("The issues raised in Mother's cross-appeal all seek an enlargement of her rights . . . because she seeks to . . . obtain an award of attorneys' fees."). Because no cross-appeal was taken, we lack appellate jurisdiction over this argument and cannot consider it. *See Hoffman v. Greenberg*, 159 Ariz. 377, 380 (App. 1988).

## CONCLUSION

¶25 For the foregoing reasons, we affirm. As the successful party, Miles is entitled to an award of costs upon compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR